# Exhibit A

DIGIMAIL MAY 2 7 2026

**Prepared By:**
**Select Portfolio Servicing, Inc.**
**3217 S Decker Lake Dr**
**Salt Lake City, UT 84119**
**888-818-6032**

**After Recording Please Return To:**
**Select Portfolio Servicing, Inc.**
**Attn: Reconveyance Dept**
**3217 S Decker Lake Dr**
**Salt Lake City, UT 84119**
**888-818-6032**

Property Address:
**12 ASPEN CT**
**NEWTOWN, PA 18940**

UPI PIN Tax ID: **29-040-176**

*[Space Above This Line For Recording Data]*

**LOAN NO.:** [redacted]

[redacted]

# LIEN MODIFICATION AGREEMENT

This Lien Modification Agreement ("Agreement") is effective **April 28, 2026**, between **CHRISTOPHER S. FRIEND**, ("Property Owner") and **Select Portfolio Servicing, Inc**, acting on behalf of the lien holder, ("Lien Holder"). If Property Owner's representations and covenants in Section 1 continue to be true in all material respects, then this Agreement will amend and supplement, as set forth in Section 2, the Security Instrument made by the Property Owner, amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") dated **September 26, 2005** in the original principal sum of **$262,400.00** and recorded on **October 11, 2005** in Book, Volume, or Liber No. **4663**, at Page **2027** (or as Instrument No. **2005135371**) of the **Official** Records of **BUCKS**, **Pennsylvania** and (2) the Note, bearing the same date as and secured by, the Security Instrument, which covers the real



[redacted]

and personal property described in the Security Instrument and defined therein as the "Property", located at **12 ASPEN CT, NEWTOWN, PA 18940**. The Lien Documents and Security Instrument are collectively referred to in this Agreement as the "Security Instrument." *Lien Holder acknowledges that the mortgage loan related to the Property has been discharged. Even though the Property Owner's personal liability on the note is discharged, the terms of the Security Instrument remain in effect. Lien Holder continues to have an enforceable lien on the Property. This lien modification agreement does not constitute a reaffirmation of debt under United States Code Title 11.*

1. Property Owner Representations and Covenants. Property Owner certifies, represents, covenants, and agrees as follows:

    a. Property Owner is experiencing a financial hardship, and as a result, (i) is in default under the Security Instrument or default is imminent, and (ii) Property Owner does not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future.

    b. There has been no impermissible change in the ownership of the Property since Property Owner signed the Security Instrument.

    c. If requested by Lien Holder, Property Owner has provided documentation for all income that they receive.

    d. All documents and information Property Owner has provided to Lien Holder in connection with this Agreement, including the documents and information regarding eligibility for this Agreement, are complete, true and correct.

    e. Property Owner has made or will make all payments required under a trial modification plan or lien workout plan, if applicable.

    f. The property is neither in a state of disrepair, nor condemned.

    g. Property Owner is not a party to any litigation involving the Security Instrument, except to the extent the Property Owner may be a defendant in a foreclosure action.

2. The Modification. If Property Owner's representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Security Instrument will automatically become modified on **May 1, 2026** (the "Modification Effective Date") and all late charges that remain unpaid will be waived. Property Owner understands that if they fail to make any payments as a precondition to this modification under a workout plan or trial modification plan, this modification will not take effect. The first modified payment will be due on **June 1, 2026**.



[redacted]

[redacted]

[redacted]

a. The Maturity Date will be: **October 1, 2035**.

b. The modified balance to satisfy the Security Instrument will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lien Holder but not previously credited to the account associated with the Security Instrument. The new balance to satisfy the Lien will be **$351,349.01** (the "New Principal Balance"). Property Owner understands that by agreeing to add the Unpaid Amounts to the outstanding balance to satisfy the Security Instrument, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. Property Owner also understands that this means interest will now accrue on the unpaid interest that is added to the outstanding balance to satisfy the Lien, which would not happen without this Agreement.

c. **$12,506.34** of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and will be treated as a non-interest bearing principal forbearance. Property Owner will not pay interest or make monthly payments on the Deferred Principal Balance. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is **$338,842.67**. Interest at the rate of **2.000%** will begin to accrue on the Interest Bearing Principal Balance as of **May 1, 2026** and the first new monthly payment on the Interest Bearing Principal Balance will be due on **June 1, 2026**. The payment schedule for the modified Security Instrument is as follows:



[redacted]

[redacted]

[redacted]

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount * | Total Monthly Payment * | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| **2026 - 2031** | **2.000%** | **05/01/2026** | **$1,026.10** | **$1,260.33**. May adjust periodically | **$2,286.43**. May adjust periodically | **06/01/2026** | **60** |
| **2031 - 2032** | **3.000%** | **05/01/2031** | **$1,192.09** | **1,260.33** | **2,452.42** | **06/01/2031** | **12** |
| **2032 - 2035** | **3.500%** | **05/01/2032** | **$1,278.14** | **1,260.33** | **2,538.47** | **06/01/2032** | **41** |
| **A final balloon payment on the Interest Bearing Principal Balance of $281,528.27 is due on the Maturity Date.** | | | | | | | |

The Deferred Principal Balance of **$12,506.34** will be outstanding as a balloon payment on the earlier of, payoff of the Interest Bearing Principal Balance, transfer of the property or on the Modified Maturity Date. The above terms in this Section 2.c shall supersede any provisions to the contrary in the Lien Documents, including but not limited to, provisions for an adjustable or step interest rate.

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore the total monthly payment may change accordingly.

The above terms in this Section 2.c shall supersede any provisions to the contrary in the Lien Documents, including but not limited to, provisions for an adjustable, step or simple interest rate. Interest will be charged on unpaid principal until the full amount of the Principal Balance has been paid. Property Owner will pay interest at a yearly rate of **2.000%**.

BALLOON NOTICE. In order to reach an affordable payment, we extended your amortization term, which is the rate or speed by which your mortgage is calculated to be paid off; however, your maturity term, which is the period of time until your mortgage becomes due and payable, could not be fully extended to an equal term. This is because the investor on your account allows us to change your amortization term but does not allow us to change the maturity term to match. As a result of the difference between these two periods, there will be an amount due of **$281,528.27** on



[redacted]

the date your lien matures on **October 1, 2035**. The amount outstanding at maturity is in addition to your monthly scheduled payment that you received as part of your modification.

d. Property Owner has agreed to establish an escrow account to pay for property taxes and homeowner's insurance and pay a monthly escrow payment in the initial amount of **$1,260.33**. Property Owner's total monthly payment of principal, interest and escrow will therefore be equal to **$2,286.43**. Property Owner acknowledges that the payments attributable to insurance and taxes are determined by the state taxing authorities and insurance companies and therefore, are subject to change from time to time. Property Owner will be notified of any changes.

3. Other Agreements. Property Owner and Lien Holder also agree to the following:

a. This Agreement shall supersede any modification, forbearance, trial period plan, or other workout plan that Property Owner previously entered into with Lien Holder.

b. The Security Instrument, as modified by this Agreement, are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

c. The Property Owner acknowledges and agrees the Security Instrument is not discharged and all terms of the Security Instrument, except as expressly modified by this Agreement, or by the U.S. Bankruptcy Code, remain in full force and effect. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the terms contained in the Security Instrument.

d. All covenants, agreements, and requirements of the Security Instrument, including all requirements to make payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments under the Security Instrument remain in full force and effect.

e. If any document is lost, misplaced, misstated or inaccurately reflects the true and correct terms and conditions of the Security Instrument as amended by this Agreement, within ten (10) days after receipt of the Lien Holder's request, Property Owner will execute, acknowledge, initial, and deliver to the Lien Holder any documentation the Lien Holder deems necessary to replace or correct the lost, misplaced, misstated or inaccurate document(s). If Property Owner fails to do so, Property Owner will be liable for any and all loss or damage which the Lien Holder reasonably sustains as a result of Property Owner's failure. At Lien Holder's option, this Agreement will be void and of no legal effect upon notice of such loss, misplacement, misstatement, or inaccuracy. If Property Owner elects not to sign any such corrective documentation, the terms of the original Security Instrument shall



[redacted]

[redacted]

continue in full force and effect, such terms will not be modified by this Agreement, and Property Owner will not be eligible for a modification.

f. The mortgage insurance premiums, if applicable, may increase as a result of the capitalization, which will result in a higher total monthly payment. Furthermore, the date on which Property Owner may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

g. As of the Modification Effective Date, notwithstanding any other provision of the Security Instrument, Property Owner agrees as follows: If all or any part of the Property or any interest in it is sold or transferred without the Lien Holder's prior written consent, the Lien Holder may, at its option, require immediate payment in full of all sums secured by the Security Instrument. However, the Lien Holder shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If the Lien Holder exercises this option, the Lien Holder shall give Property Owner notice of acceleration. The notice shall provide a period of not less than thirty (30) days – depending on state law and other requirements – from the date the notice is delivered or mailed within which all sums secured by the Security Instrument must be paid. If these sums are not paid prior to the expiration of this period, the Lien Holder may invoke any remedies permitted by the Security Instrument without further notice or demand on Property Owner.

h. As of the Modification Effective Date, a buyer of the Property will not be permitted, under any circumstance, to assume the Mortgage. In any event, this Agreement may not be assigned to, or assumed by, a buyer of the Property.

i. All payment amounts specified in this Agreement assume that payments will be made as scheduled.

j. If Property Owner is in bankruptcy upon execution of this document, Property Owner will cooperate fully with Lien Holder in obtaining any required bankruptcy court and trustee approvals in accordance with local court rules and procedures. Property Owner understands that if such approvals are not received, then the terms of this Agreement will be null and void. If this Agreement becomes null and void, the terms of the original Security Instrument shall continue in full force and effect, and such terms shall not be modified by this Agreement.

k. In agreeing to the changes to the Security Instrument as reflected in this Agreement, Lien Holder has relied upon the truth and accuracy of all of the representations made by Property Owner, both in this Agreement and in any documentation provided by or on behalf of Property Owner in connection with this Agreement. If Lien Holder subsequently determines that such representations or documentation were not truthful



[redacted]

or accurate, Lien Holder may, at its option, rescind this Agreement and reinstate the original terms of the Security Instrument as if this Agreement never occurred.

**TAX CONSEQUENCES OF LOAN MODIFICATIONS.** There may be income tax consequences related to this loan modification. Because you will be responsible for paying any income tax due as a result of this loan modification, you may wish to consult a tax advisor before accepting this loan modification.



[redacted]

The Borrower(s) and Lender have signed this Agreement as of the Effective Date.

Christopher S. Friend — Date: 5 23 2026

Borrower - **CHRISTOPHER S. FRIEND**

**ACKNOWLEDGMENT**

State of PA §
§
County of Buck §

On this 23 day of May, 2026, before me, the undersigned officer, personally appeared **CHRISTOPHER S. FRIEND**, known to me (or satisfactorily proven), to be the person whose name is subscribed to the within instrument, and acknowledged that he/she executed the same for the purposes therein.

In witness whereof, I hereunto set my hand and official seal.

Commonwealth of Pennsylvania - Notary Seal
Maria Gallagher Chubb, Notary Public
Bucks County
My Commission Expires April 22, 2028
Commission Number [illegible]

(Seal)

Notary Public

Maria Gallagher Chubb
Printed Name

Notary
Title of Officer

My Commission Expires: 04/22/2028



[redacted]

[redacted]

[redacted]

ACCEPTED AND AGREED TO BY THE OWNER AND HOLDER OF SAID OBLIGATION TO PAY

**Select Portfolio Servicing, Inc**

By: ______________________ Lindsay Jones -Lender

Document Control Officer

JUN 02 2026

Date of Lender's Signature

Certificate of Residence:

I We do hereby certify that the precise address of the within named financier, assignee or person entitled to interest is **3217 S. Decker Lake Dr., Salt Lake City, UT 84119**.

**Select Portfolio Servicing, Inc**

By: ______________________ Lindsay Jones

Document Control Officer

JUN 02 2026

Its: ______________________



[redacted]

[redacted]

[redacted]

## ACKNOWLEDGMENT

State of Utah §
§
County of Salt Lake §

On this 2, day of June 2026, personally appeared before me Lindsay Jones, whose identity is personally known to me (or proven on the basis of satisfactory evidence) and who by me duly sworn/affirmed, did say that he/she is a Document Control Officer of **Select Portfolio Servicing, Inc** and that said document was signed by him/her on behalf of said Corporation by Authority of its Bylaws, or (Resolution of its Board of Directors.) and said Document Control Officer acknowledged to me that said Corporation executed the same.

Signature of Notary Public

Amanda Jennings
Printed Name

Residing at: Salt Lake Utah

(Seal) My Commission Expires: MAR 15 2028

AMANDA JENNINGS
Notary Public State of Utah
My Commission Expires on:
March 15, 2028
Comm. Number: 736148



[redacted]

[redacted]

[redacted]

**EXHIBIT A**

**BORROWER(S): CHRISTOPHER S. FRIEND**

**LOAN NUMBER:** [redacted]

**LEGAL DESCRIPTION:**

**STATE OF PENNSYLVANIA, COUNTY OF BUCKS, AND DESCRIBED AS FOLLOWS:**

**ALL THAT CERTAIN PARCEL OF LAND WITH THE BUILDINGS AND IMPROVEMENTS THEREON SITUATE IN THE TOWNSHIP OF NEWTOWN COUNTY OF BUCKS COMMONWEALTH OF PENNSYLVANIA BOUNDED AND DESCRIBED IN ACCORDANCE WITH A PLAN ENTITLE RECORD PLAN TH-1 NEWTOWN GRANT PREPARED BY BOUCHER AND JAMES, INC., ENGINEERS AND SURVEYORS DATED JANUARY 5, 1979 LAST REVISED FEBRUARY 6, 1986 RECORDED IN PLAN BOOK 233 PAGE 19 AS FOLLOWS, TO WIT:**

**BEGINNING AT A POINT ON THE SOUTHWESTERLY SIDE OF ASPEN COURT AS SHOWN ON SAID PLAN WHICH POINT IS MEASURED THE TWO FOLLOWING COURSES AND DISTANCES FROM A POINT OF REVERSE CURVE ON THE SOUTHEASTERLY SIDE OF COTTONWOOD STREET (46 FEET WIDE) VIZ: (1) ON THE ARC OF A CIRCLE CURVING TO THE RIGHT HAVING A RADIUS OF 20 FEET THE ARC DISTANCE OF 30.95 FEET (2) SOUTH 34 DEGREES 00 MINUTES 00 SECONDS EAST 108.04 FEET TO THE POINT AND PLACE OF BEGINNING; THENCE EXTENDING ALONG THE SOUTHWESTERLY SIDE OF ASPEN COURT SOUTH 34 DEGREES 00 MINUTES 00 SECONDS EAST 24.16 FEET TO A POINT OF CURVE; THENCE EXTENDING ALONG THE ARC OF A CIRCLE CURVING TO THE LEFT HAVING A RADIUS OF 53 FEET THE ARC DISTANCE OF 7.20 FEET TO A POINT; THENCE EXTENDING ALONG LOT NO. 167 ON SAID PLAN SOUTH 56 DEGREES 00 MINUTES 00 SECONDS WEST 105.49 FEET TO A POINT; THENCE EXTENDING ALONG LOT NO. 176 ON SAID PLAN NORTH 34 DEGREES 00 MINUTES 00 SECONDS WEST 31.34 FEET TO A POINT; THENCE EXTENDING ALONG LOT NO. 169 ON SAID PLAN NORTH 56 DEGREES 00 MINUTES 00 SECONDS EAST 105.00 FEET TO THE POINT AND PLACE OF BEGINNING.**

**SUBJECT TO A 5 FOOT WIDE ACCESS EASEMENT ALONG THE REAR OF THE NORTHEASTERLY MOST PROPERTY LINE.**



[redacted]

[redacted]

[redacted]

**BEING PARCEL NO. 29-40-176.**

**UPI/PIN/Tax ID: 29-040-176**

**ALSO KNOWN AS: 12 ASPEN CT, NEWTOWN, PA 18940**



[redacted]

[redacted]

[redacted]